**MARKS & KLEIN, LLP**
63 Riverside Avenue
Red Bank, NJ 07701
Justin M. Klein, Esq.
Attorneys for Plaintiff

**EICHEN CRUTCHLOW ZASLOW & MCELROY, LLP**
40 Ethel Road
Edison, New Jersey 08817
Barry Eichen, Esq.
Daryl Zaslow, Esq.
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID GREENE, individually and on behalf of all others similarly situated, | Civil Action No.: |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| BMW OF NORTH AMERICA, BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC a/k/a BRIDGESTONE AMERICAS TIRE OPERATIONS, BRIDGESTONE AMERICAS INC., JOHN DOES 1 through 10, inclusive, and ABC CORPORATIONS 1-10 inclusive, | **CLASS ACTION** |
| Defendants. | |

The plaintiff, individually and on behalf of all others similarly situated, alleges, by and through his attorneys Marks & Klein, LLP and Eichen Crutchlow Zaslow & McElroy, LLP as follows:

## CASE SUMMARY

1.      This class action is brought on behalf of consumers who have fallen victim to a fraudulent and deceptive scheme created by BMW of North America (hereinafter "BMW"), Bridgestone Firestone North American Tire, LLC ("BFNA"), Bridgestone Americas Tire Operations LLC a/k/a Bridgestone Americas Tire Operations (hereinafter "BATO"), and Bridgestone Americas Inc. (hereinafter "BSA") (collectively "Defendants").

2.      Representative Plaintiff David Greene ("Greene" or "Plaintiff") leased a 2010 BMW 335i Convertible with Sports Package (the "Vehicle") for $749.00 per month from Paul Miller BMW in Wayne, New Jersey on March 17, 2010.

3.      Greene's Vehicle was outfitted with Bridgestone Potenza Run Flat Tires ("Potenza RFTs"), which, upon normal and limited use became unusable and dangerous to Plaintiff and others on the roads he travelled, in an extremely short and unconscionable period of time.  Specifically, within 13,800 miles of use, 3 out of 4 of Greene's Potenza RFTs had large, protruding bubbles in the sidewalls.

4.      Greene noticed the first bubble in his left-rear Potenza RFT within six (6) months of leasing the Vehicle and only driving it on special occasions.

5.      Greene noticed the second bubble in his right-front Potenza RFT within twelve (12) months and the third bubble in that same tire within fourteen (14) months of leasing the Vehicle.

6.      After calling numerous BMW dealerships throughout the State of New Jersey, Greene was advised by dealership representatives that this in fact was a dangerous situation and that he should immediately replace the Potenza RFTs.

2

7.     Unfortunately, Greene also learned that this problem was a "normal occurrence" for the Potenza RFTs and learned that the Potenza RFTs were the only model of tire available for use for his Vehicle.

8.     When Greene went to Paul Miller BMW to allow them to remedy the defects, BMW callously dismissed Greene.

9.     Needing to replace the Potenza RFTs, Greene searched for another set of Potenza RFTs that typically cost between $1,350 and $1,700 for a set of four (4). Greene purchased a set for sale by auction on ebay.com for $975.

10.     Upon investigation, Greene learned that numerous other owners and lessees of vehicles equipped with Potenza RFTs experienced the manifested defects Greene experienced.

11.     Despite being fully aware that owners and lessees of BMW vehicles equipped with Potenza RFTs would experience premature defects, Defendants still manufactured, marketed, distributed, sold, and leased Potenza RFTs and vehicles equipped with the dangerous Potenza RFTs as a part of their scheme to maximize profits, all at the expense of Plaintiff and those like him.   Therefore, Plaintiff and those like him are entitled to relief in the form of monetary damages, injunctive relief, attorneys' fees and costs of suit, and all other relief afforded under federal and state law.

**JURISDICTION AND VENUE**

12.     The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2) in that the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which one or more of members of the putative class are citizens of a state different from any one of the Defendants.

3

13.     The Court has personal jurisdiction over Defendants because they each transact business in the State of New Jersey and have committed tortious acts within this State.   In addition, each Defendant has purposefully directed its activities at residents of the State of New Jersey and this litigation results from injuries that arise out of and relate to those activities. Defendants also maintain continuous and systemic business contacts with the State of New Jersey.  Defendants employed and relied upon agents and representatives throughout the United States who maintained purposeful, continuous and systemic contacts with the State of New Jersey to assist in the effectuation of the unlawful practices alleged in this Verified Complaint. At all times material, individuals acted as the agents and representatives of Defendants, and therefore, their conduct is attributable to one or more of the Defendants.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**PARTIES**

**The Plaintiff**

15.     Plaintiff, David Greene, is a citizen of the state of New Jersey.  He resides in Monmouth County, New Jersey.

**The Defendants**

16.     Defendant, BMW, is, upon information and belief, a limited liability company with its principal place of business and corporate headquarters located at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07675. BMW has a Vehicle Preparation Center in Port Jersey, New Jersey. Furthermore, BMW's Eastern Regional Headquarters, Technical Training Center and Sales Headquarters for North America are all located in the state of New Jersey.

4

17.     Defendant, BFNA, is, upon information and belief, a limited liability company with its headquarters located in Nashville, Tennessee. BFNA expressly warranted the Potenza RFTs that were placed on Greene's Vehicle and the other vehicles in dispute. BFNA regularly conducts business in the state of New Jersey. Such business includes, but is not limited to, marketing, distributing and warranting Potenza RFTs and numerous other brands of tires.

18.     Defendant, BATO, is, upon information and belief, a limited liability company with its headquarters located in Nashville, Tennessee and a successor to BFNA.  BATO also regularly conducts business in the state of New Jersey. Such business includes, but is not limited to, manufacturing and marketing, distributing and warranting Potenza RFTs and numerous other brands of tires.

19.     Defendant, BSA, is, upon information and belief, an American corporation with headquarters located in Nashville, Tennessee. BSA is the holding company for BATO and all other Bridgestone/Firestone companies in North and South America, which design, manufacture, market and sell tires and operate 50 production facilities. Tires are the major product of Defendants BFNA, BATO and BSA (collectively "Bridgestone") and are central to its operations. Potenza RFTs are among Bridgestone's widely marketed, sold and used run-flat tire operation. Bridgestone, itself, and/or through its agents and representatives, directly marketed, distributed and/or sold its tires throughout the State of New Jersey.

## ALLEGATIONS

20.     This class action is brought on behalf of all current and former owners and lessees of BMW vehicles equipped with Potenza RFTs who have become victims of Defendants' intentional scheme to sell and distribute defective Potenza RFTs for their own pecuniary gain.

21.     Defendants collaboratively played intricate roles in the deceptive and voracious

practice of selling defective Potenza RFTs. While Bridgestone manufactured and furnished the defective Potenza RFTs to BMW, BMW placed the tires it knew were defective and dangerous on the vehicles it manufactured, marketed, sold, and distributed to the general public through BMW's licensed dealers and distribution centers. Bridgestone deceived consumers with its inadequate written warranty that was provided with all Potenza RFTs. <u>Attached hereto as Exhibit A is a true and correct copy of the BFNA/Bridgestone Warranty Agreement</u>.

**<u>Warranties</u>**

**<u>BFNA/Bridgestone Warranty</u>**

22.     All Potenza RFTs sold by Defendants included a BFNA/Bridgestone Warranty, (the "BFNA/Bridgestone Warranty"), which included the replacement of a defective tire with an equivalent new tire free of charge if the warranted tire becomes "unusable for any reason within the manufacturer's control." <u>See Exhibit A at page 30</u>.

23.     The BFNA/Bridgestone Warranty supposedly affords replacements of Potenza RFTs "during the first twenty-five percent (25%) of tread wear or within twelve (12) months from the date of purchase (proof of purchase date required; without proof of purchase date, then within 12 months from the date of tire manufacture), whichever occurs first." <u>See Exhibit A at page 30</u>.

24.     Although Bridgestone included the BFNA/Bridgestone Warranty with the sale of each defective Potenza RFT, Bridgestone intentionally wrote the warranty to limit their obligations to the point that they would essentially never be responsible for reimbursing or replacing the Potenza RFTs, which they knew were defective at the time of sale.

25.     Furthermore, regardless of whether the limitations and exclusions were inconspicuous and unconscionable, they were, and are, at all material times inoperative because

Bridgestone possessed unilateral knowledge that the Potenza RFTs were defective before, during, and after sales occurred.

26.     Even when Plaintiff made the proper efforts to return the defective Potenza RFTs Plaintiff was denied the ability to replace the Potenza RFTs free of charge.

**BMW Warranty**

27.     The tire warranty issued by BMW simply references the BFNA/Bridgestone Warranty ("BMW Warranty"). Attached hereto as Exhibit B is a true and correct copy of the BMW Warranty.

28.     However, BMW intentionally and deceptively wrote the BMW Warranty to hide that it excluded BMW's obligations, so that BMW itself would never be responsible for reimbursing or replacing the Potenza RFTs that it knew were defective at the time of sale.

29.     Moreover, regardless of whether or not the limitations and exclusions were inconspicuous and unconscionable, they were, and are, at all material times inoperative because BMW possessed unilateral knowledge that the Potenza RFTs were defective before, during, and after a sale occurred.

30.     Even when Greene made the proper efforts to have his defective and dangerous Potenza RFTs replaced or, in the alternative, be reimbursed for replacement Potenza RFTs, BMW still refused to reimburse or replace the defective Potenza RFTs.

**Defendants' Knowledge of Defects**

31.     At all material times, all Defendants were aware, or should have been aware, of the short life-span of the Potenza RFTs, such that the tires would become defective and unsafe in as little as six (6) months, and in some cases sooner.

32.     However, as a part of their scheme to increase profits at the expense of

consumers, Defendants intentionally failed to disclose material information relating to the unconscionably short life-span of the Potenza RFTs to the general public prior to the sale of the defective Potenza RFTs.

33.     Defendants' knowledge of the defects is supported by the prerequisite testing that they performed, or should have performed, on the Potenza RFTs, which would have put them on notice of the obvious defects that nearly all consumers experienced after purchasing the subject vehicles equipped with Potenza RFTs.

34.     Defendants were, or should have been, aware of the numerous negative consumer reviews, reports, and internet posts that are available to Defendants, along with the rest of the world. Indeed, at least ten (10) heavily trafficked automotive websites include individual comments that unequivocally testify about the extremely detrimental effects the defective Potenza RFTs have had on consumers' lives.

35.     For example, Tiretrack.com, a leading tire industry website, includes numerous individual reviews from owners and lessees of vehicles equipped with Potenza RFTs.  The reviews are resoundingly negative and generally highlight rough and distractingly noisy rides, the need to replace the tires prematurely, and unreasonably excessive tread wear consumers experienced shortly after purchasing Potenza RFTs.  Specific accounts of consumers' experience with Potenza RFTs are as follows:

- The tires are great if you have money to waste and drive your car for fun. They are not for anything else. I had them on my car and went through 3 sets of rear tires in 2 years, and I only had these on the car in the spring/summer and beginning of fall. . . My first set of rears lasted 13,000 miles, my second set ONLY last for 2[,]000 miles and my third set has about 5/32 left after 6 months [of] driving. [posted 11/03/2010].

- I will never purchase this tire again. For the price, I feel that I was totally ripped off. . . after very diligently having my tires rotated and balanced, I couldn't figure out what was wrong. Now I know it's just not a good tire. [posted 9/18/2010].

- NTB says I'll need a new tire since they can't be patched or plugged and BMW needs to run a "who knows how much it'll cost to do a diagnostic check." Seriously, these RFT's are not worth the $1[,]000+ that they cost. Period. [posted 9/2/2010].

- So this will be my 3rd set of rear tires in only 1 ½ years, my first set of rear tires lasted 12K, my second set did not even last 2 months, less than 5K when I had them taken off my car in November . . . when I called the shop last week they informed me that my tires had 2/32 and were illegal to put back on [the car] after spending $800 for them not to last 5K. [posted 3/22/2010].

- I can't wait till I fully tear them to shreds and replace them . . . Handling: It's bad… actually, it's more like megabad. Imagine driving on steel belts. . . the tires just don't flex like a normal rubber tire would. As a result, you don't get solid adhesion throughout a turn, and if you get on the gas a little too early, you can lose traction and send your car going sideways. [posted 11/25/2009].

- If you like a harsh ride without good performance, minimal traction in the rain and plenty of noise for an excessive amount of money . . . then this is the tire for you. They don't last very long either, so you'll get to buy new ones in a short period of time. . . I will NEVER buy another set of run-flats. [posted 8/14/2009].

- They are very noisy tires. As they wore they got noisier. I replaced them after 50% wear because the rough and noisy ride became too bad. I would not recommend these tire[s] to any BMW owner. [posted 4/26/2009].

- BMW should offer a non run flat option with a mobility kit for folks who want a better ride. I'll probably replace with a non-flat tire. [posted 4/22/2009].

- The Bridgestone is a good tire for up to 20,000 miles. After that forget [it]. Not worth the money. Unless you want the peace of mind of having run flat tires. A spare AAA tire would be cheaper. [posted 3/24/2009].

- These tires have been the bane of my driving existence. The tread wear is awful! I just had to replace 2 rear tires after only 10k miles. One of my front tires has developed a separation bubble, and neither the manufacturer, nor BMW, really cares. They both refuse to replace the tire, and it is a defect. I drive like a grandfather, and I don't hit curbs, which is what they blame for the separation. For me, the cost of replacement and lack of quality far outweigh keeping the tire the same as what BMW recom[m]end. [posted 2/19/2009].

- RFT tires are a poor choice of tire, what good is a tire that after it runs flat it is destroyed and you have to buy a new very expensive one? [posted 10/10/2008].

- Bridgestone Potenza RE050 RFT tires are the worst I have ever had. At 11,000 miles the tires were extremely noisy. Tires were replaced. At 23,000 miles, I had the same problem again which is very noisy even at low speeds on a newly paved street. I

contacted Bridgestone for the problem who blamed BMW for poor suspension and undercarriage. [posted 4/2/2008].

- I have never been happy with these tires. They are horrible. I cannot believe that BMW allowed these tires to be considered as original equipment. [posted 3/12/20058].

- These tires are terrible! The ride is extremely harsh, with massive jolts over potholes. They tramline on every uneven surface (which is everywhere in San Francisco), have virtually no steering feel, and feel downright dangerous over 80 mph. RFTs are a scam, and I am shocked that BMW would give up so much performance to save a few hundred dollars on every car by not having a spare tire and jack. I have owned 20 cars in my life and my previous BMW was my favorite. Don't buy these tires! Don't buy BMWs with them! [posted 1/16/2008].

36.    Despite the fact that Defendants had actual knowledge that the Potenza RFTs were defective, they still failed to disclose material information about the defective nature of the Potenza RFTs, and even worse, Defendants continued to sell Potenza RFTs at an extraordinarily expensive price.

37.    Defendants' actions are even more egregiously deceptive in light of the fact that many consumers did not have an option of what tire to use, but instead had to continually replace the defective Potenza RFTs in order to operate their vehicles.  The only other replacement option for many Potenza RFT purchasers has, upon information and belief, been discontinued.

**Defendants' History in Engaging in Deceptive Practices**

38.    Knowingly designing, manufacturing, marketing, distributing, and selling defective tires is not a new practice of Defendants.

39.    Defendants' history of engaging in unlawful deceptive practices is evidenced by a recent case filed in this same District Court, which is nearly identical to this case.

40.    On September 29, 2008 a complaint was filed against BMW, BATO and Bridgestone for engaging in unlawful deceptive practices in connection with the sale of Turanza EL42RFT tires ("Turanzas") in the United States District Court for the District of New Jersey,

Docket No. 2:08-CV-02619-KSH-PS.

41.     Ultimately, that case was settled pursuant to a Settlement Agreement dated November 18, 2009 ("Turanza Settlement Agreement"); Final Approval was granted on April 29, 2010.

42.     Pursuant to the Turanza Settlement Agreement, all Defendants named herein agreed to reimburse consumers and/or replace the defective Turanzas under specified conditions in the Settlement Agreement. Attached hereto as Exhibit C is a true and correct copy of the Turanza Settlement Agreement.

**Plaintiff's Greene's Experiences with Potenza RFTs**

43.     Plaintiff Greene's experience with his BMW equipped with Potenza RFTs has been significantly worse than with any other vehicle tires he has ever owned or leased, and he has owned and leased many.

44.     Despite the fact that Greene primarily drives his BMW on the weekends and rarely drives the vehicle in inclement weather, his Potenza RFTs are distractingly loud and do not offer a controlled ride.

45.     Moreover, after having the car for only fifteen (15) months and having put only 13,800 miles on the vehicle, the Potenza RFTs on Greene's BMW developed large bubbles in the sidewalls of three (3) out of the four (4) Potenza RFTs, and he was advised that they needed to be replaced.

46.     After shopping for replacement Potenza RFTs, Greene unfortunately discovered that the Potenza RFTs were the only make and model of tires BMW offered for his model vehicle. Therefore, Greene had to bear the cost of prematurely replacing the original Potenza RFTs with the same exact defective tires.

47.     Upon information and belief, Pilot tires, manufactured by Michelin, could have been used for Greene's vehicle. However, Michelin discontinued manufacturing that model of tire.

48.     Upon offering Defendants the opportunity to cure the defects, BMW informed Greene that the first bubble appearing at only 3,500 miles, and three Potenza RFTs with bubbles under 14,000 miles, was a "normal problem for this type of tire."

49.     As a result, Greene called other New Jersey dealerships in search of additional information; Greene was consistently told that the bubble problem was a common issue with the Potenza RFT, that the problem would continue to occur, and that the Potenza RFTs on his vehicle needed to be replaced.

50.     Ultimately, having no other choice, Greene purchased new Potenza RFTs for his vehicle, which payment in and of itself constitutes an ascertainable loss.

## CLASS ACTION ALLEGATIONS

51.     Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff brings this action on behalf of themselves and the Class of similarly situated persons defined as:

> **Nationwide Class ("The Class")**:
>
> All current and former owners and/or lessees of BMW automobiles equipped with Potenza RFT tires who are residents of the United States (including persons and business entities).

52.     Plaintiff also bring this action on behalf of the following Sub-Class:

> **New Jersey Sub-Class**:
>
> All current and former owners and/or lessees of BMW automobiles equipped with Potenza RFT tires sold or leased in the State of New Jersey.

Excluded from the Class and the New Jersey Sub-Class are the officers, directors, affiliates, and employees of Defendants and their respective legal representatives, heirs, successors and assigns,

along with any person who has suffered physical injury as a result of the defective Potenza RFTs. Plaintiffs reserve the right to amend the definition of Class and New Jersey Sub-Class upon discovery and the receipt of further information.

**Rule 23(a)**

53. **Numerosity:** Members of the Class and the New Jersey Sub-Class are so numerous that their individual joinder is impractical. The precise identities, number and addresses of members of the Class and the New Jersey Sub-Class are unknown to Plaintiff, but may and should be known with proper and full discovery from Defendants, third parties, and their respective records.

54. **Existence of Common Questions of Fact and Law:** There is a well-defined commonality and community of interest in the questions of fact and law affecting the members of the Class and the New Jersey Sub-Class. Common questions of fact and law include but are not limited to:

    (a)    Whether the Potenza RFTs are defective.

    (b)    Whether Defendants intentionally failed to notify Plaintiff, the Class, and the New Jersey Sub-Class of material facts regarding the defective Potenza RFTs.

    (c)    Whether Defendants engaged in unfair or unlawful business practices when selling the subject automobiles containing the defective Potenza RFTs.

    (d)    Whether Defendants' express warranties are unconscionable, and thus, null and void.

    (e)    Whether Defendants breached their expressly written warranties with Plaintiff, the Class, and the New Jersey Sub-Class.

    (f)    Whether Defendants breached their implied warranties with Plaintiff, the Class, and the New Jersey Sub-Class.

(g)     Whether BMW breached its duty of good faith and fair dealing.

(h)     Whether Defendants have been unjustly enriched.

(i)     Whether Plaintiff, the Class, and the New Jersey Sub-Class are entitled to compensatory, trebled, statutory, and/or punitive damages based on Defendants' fraudulent and illegal conduct or practices.

(j)     Whether Plaintiff, the Class, and the New Jersey Sub-Class are entitled to injunctive relief.

(k)     Whether Defendants should be obligated to disgorge the illegal profits obtained by the schemes alleged herein.

(l)     Whether Plaintiff, the Class, and the New Jersey Sub-Class are entitled to an award of reasonable attorneys' fees, prejudgment interest, and costs of suit.

(m)     Whether Plaintiff, the Class, and the New Jersey Sub-Class are entitled to any other equitable relief.

55.     **Typicality:** Plaintiff's claims are at all times typical and relevant to the claims of the Class and the New Jersey Sub-Class. Plaintiff's claims have a common origin and share common bases. Plaintiff's claims originate from the same illegal and wrongful practices of Defendants, and Defendants act in the same way toward Plaintiff, the Class members, and the New Jersey Sub-Class members. If brought and prosecuted individually, the claims of each Class member and New Jersey Sub-Class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

56.     **Adequacy:** Plaintiff is an adequate representative of the Class and the New Jersey Sub-Class because Plaintiff's interests do not conflict with the interests of the members of the Classes Plaintiff seeks to represent. Plaintiff has retained competent counsel, and intends to prosecute this action vigorously. Plaintiff's counsel will fairly and adequately protect the interests of the members of the Class and the New Jersey Sub-Class.

**Rule 23(b)(2) and (3)**

57.    This lawsuit may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Plaintiff, the Class, and the New Jersey Sub-Class seek declaratory and injunctive relief, and all of the above factors of numerosity, common questions of fact and law, typicality, and adequacy are present. Moreover, Defendants have acted on grounds generally applicable to Plaintiff and the Class and New Jersey Sub-Class as a whole, thereby making declaratory and/or injunctive relief proper and suitable remedies.

58.    **Superiority**: This lawsuit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Class and the New Jersey Sub-Class predominate over the questions affecting only individual members of the classes, and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual class member may be disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to proscribe Defendants' conduct and practices. Additionally, effective redress for each and every Class member and New Jersey Sub-Class member against Defendants may be limited or even impossible where serial, duplicate, or concurrent litigation occurs arising from these disputes.  Even if individual members of the classes could afford or justify the prosecution of their separate claims, such an approach would compound judicial inefficiencies, and could lead to incongruous and conflicting judgments against Defendants.

**Notice to Attorneys General of Action**

59.    A copy of this Verified Complaint shall be mailed to the Attorneys General, Administrators, Commissioners, or other officers, as required by the laws of New Jersey, upon and at the time of the filing of the Verified Complaint pursuant to N.J.S.A. § 56:8-20.

**FIRST CLAIM FOR RELIEF**
**MAGNUSON-MOSS ACT (15 U.S.C. §§ 2301-2312)**
**BREACH OF EXPRESS WARRANTY**
*(As to BMW, BFNA, BATO and BSA Defendants*
*on Behalf of The Class and The New Jersey Sub-Class)*

60.     Plaintiff repeats and realleges each of the foregoing paragraphs of this Verified Complaint as set forth herein.

61.     According to 15 U.S.C. § 2310(d)(1), a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state.

62.     The vehicles and Potenza RFTs are "consumer products" as defined by 15 U.S.C. § 2301(1).

63.     Plaintiff, Class members, and New Jersey Sub-Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

64.     Defendants are "suppliers" as defined by 15 U.S.C. § 2301(4).

65.     Defendants are "warrantors" as defined by 15 U.S.C. § 2301(5).

66.     Defendants provided Plaintiff, Class members, and New Jersey Sub-Class members with "written warranties" as defined by 15 U.S.C. § 2301(6).

67.     Defendants breached their express warranties when they knowingly sold defective Potenza RFTs to Plaintiff, Class members, and New Jersey Class members for all of the reasons set forth herein.

68.     Any limitations or exclusions included in Defendants' express warranties that purport to limit or exclude Defendants from liability, and release Defendants from their obligations to not sell and/or replace defective Potenza RFTs are unconscionable, as set forth

16

herein, and are therefore unenforceable under the Magnuson-Moss Act.

69.     All jurisdictional requirements are satisfied, and therefore Plaintiff, Class-members, and New Jersey Sub-Class members are entitled to damages at an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**MAGNUSON-MOSS ACT (15 U.S.C. §§ 2301-2312)**
**BREACH OF IMPLIED WARRANTY**
*(As to BMW, BFNA, BATO and BSA Defendants*
*on Behalf of The Class and The New Jersey Sub-Class)*

70.     Plaintiff repeats and realleges each of the foregoing paragraphs of this Verified Complaint as set forth herein.

71.     The vehicles and Potenza RFTs are "consumer products" as defined by 15 U.S.C. § 2301(1).

72.     Plaintiff, Class members, and New Jersey Sub-Class members are "consumers" as defined by 15 U.S.C. § 2301(3).

73.     Defendants are "suppliers" as defined by 15 U.S.C. § 2301(4).

74.     Defendants are "warrantors" as defined by 15 U.S.C. § 2301(5).

75.     Defendants provided Plaintiff, Class members, and New Jersey Sub-Class members with "written warranties" as defined by 15 U.S.C. § 2301(6).

76.     Defendants provided Plaintiff, Class members, and New Jersey Sub-Class members with "implied warranties" as defined by 15 U.S.C. § 2301(7).

77.     Defendants breached their implied warranties because every sale of a vehicle equipped with Potenza RFTs included an implied warranty under New Jersey state law.

78.     Defendants breached their implied warranties because they sold Potenza RFTs that were defective at the time of sale; and due to effects such as abnormal and excessive tread

wear, excessive noise, and unbearable rough rides, the Potenza RFTs were prematurely unusable. Therefore, the Potenza RFTs were at no time before, during or after the sale fit for the ordinary purposes for which tires are used.

79.     Defendants also breached their implied warranties when they sold Plaintiff, Class members, and New Jersey Sub-Class members defective Potenza RFTs that were not of the quality that would meet any reasonable consumer's expectations of what a tire, or run-flat tire, should be. The Potenza RFTs do not conform to the promises and affirmations of facts included in the written agreements because they were defective at the time of sale.

80.     Defendants further breached their implied warranties because they knew, or should have known, that Plaintiff, Class members, and New Jersey Sub-Class members relied on Defendants' experience, skill and judgment to furnish Potenza RFTs that were not defective, but instead a suitable set of "wheels" to ride on at the time of purchase.

81.     Any limitations Defendants have placed on the implied warranties via the written, express warranties are ineffective under federal and state law because they violate §2308 of the Magnuson-Moss Act, which prohibits suppliers from disclaiming or modifying implied warranties with express warranties that are unreasonable and lack conspicuous notification of the Potenza RFTs' pre-existing defects.

82.     All jurisdictional requirements are satisfied, and therefore Plaintiff, Class-members, and New Jersey Sub-Class members are entitled to damages at an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY
*(As to BMW, BFNA, BATO and BSA Defendants*
*on Behalf of The Class and New Jersey Sub-Class)*

83.     Plaintiff repeats and realleges each of the foregoing paragraphs of this Verified Complaint as set forth herein.

84.     The BFNA/Bridgestone Warranty states "replacement of an equivalent new tire either free of charge" if the tire becomes "unusable for any reason within the manufacturer's control . . . during the first twenty-five percent (25%) of tread wear or within twelve (12) months from the date of purchase (proof of purchase date required; without proof of purchase date, then within 12 months from the date of tire manufacture), whichever occurs first."

85.     BFNA, BATO and BSA breached the BFNA/Bridgestone Warranty by selling Potenza RFTs to Plaintiff, Class members, and New Jersey Sub-Class members when they were fully knowledgeable that the tires were defective, meaning they knew, or should have known, that the tires would become prematurely unusable and consumers would have to experience premature replacement.

86.     BFNA, BATO and BSA further breached the BFNA/Bridgestone Warranty because, while having knowledge of the Potenza RFTs defects, as a way to increase profits, they refused to replace the defective Potenza RFTs free of charge.

87.     Even if Plaintiff failed to meet any of the conditions set in the BFNA/Bridgestone Warranty for replacement or refund, Plaintiff's failure is irrelevant because all of the conditions are unconscionable since Defendants possessed unilateral knowledge of the Potenza RFTs' already existing defects, therefore making the entire BFNA/Bridgestone Warranty null and void.

88.     BFNA, BATO and BSA intentionally included a number of limitations and exclusions in the BFNA/Bridgestone Warranty as a part of their scheme to unjustifiably

minimize their obligations to replace the Potenza RFTs (i.e. improper use or operation). However, all of the limitations and exclusions set forth in the BFNA/Bridgestone Warranty are null and void because they too are unconscionable since knowledge of the Potenza RFTs defective nature was unilaterally possessed by the Defendants.

89.    BMW breached the BMW Warranty, as they knowingly engaged in the same deceptive practices as the BFNA, BATO and BSA Defendants, as set forth in this claim for relief, and aided the BFNA, BATO and BSA Defendants by continuing to market and sell vehicles equipped with Potenza RFTs that BMW knew, or should have known, were defective.

90.    Since Defendants were, and are, in full control of the Potenza RFTs' defective design and effects, their sale and the subsequent refusal to replace the Potenza RFTs was a breach of the express warranties. Plaintiff, Class members, and New Jersey Sub-Class members have all fallen victim to Defendants' deceptive practices and are therefore entitled to damages at an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (As to BMW, BFNA, BATO and BSA Defendants
### on Behalf of The Class and New Jersey Sub-Class)

91.    Plaintiff repeats and realleges each of the foregoing paragraphs of this Verified Complaint as set forth herein.

92.    Every sale of a vehicle equipped with Potenza RFTs includes an implied warranty of merchantability.

93.    Defendants breached their implied warranty of merchantability because they sold Potenza RFTs that were defective at the time of sale; and due to effects such as abnormal tread wear, excessive noise, and unbearable rough rides the tires were prematurely unusable. Therefore, the Potenza RFTs were at no time before, during or after the sale fit for the ordinary

purposes for which tires are used.

94.     Defendants also breached their implied warranty of merchantability when they sold Plaintiff, Class members and New Jersey Sub-Class members defective Potenza RFTs that were not of the quality that would meet any reasonable consumer's expectations of what a tire, or run-flat tire, should be.

95.     Defendants further breached their implied warranty of merchantability because they sold Potenza RFTs that do not conform to the promises and affirmations of facts included in the BFNA/Bridgestone Warranty and BMW Warranty since the Potenza RFTs were defective at the time of sale.

96.     Any limitations or exclusions included in the BFNA/Bridgestone Warranty and BMW Warranty that limits or excludes Defendants' liability and obligations to not sell and/or replace defective Potenza RFTs is inoperative because Defendants knew the Potenza RFTs were defective at the time of sale.

97.     Any limitations or exclusions included in BFNA/Bridgestone Warranty and BMW Warranty that limits or excludes Defendants' liability and obligations to not sell and/or replace defective Potenza RFTs is inoperative because there were no representations included in any agreement that conspicuously notified Plaintiff, Class members and New Jersey Sub-Class members of the Potenza RFTs' existing defects.

98.     By selling the defective Potenza RFTs and refusing to replace them with non-defective tires, Defendants breached the implied warranty of merchantability that has in turn damaged Plaintiff, Class members, and New Jersey Sub-Class members who are entitled to damages at an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (As to BMW Defendants on Behalf of The Class and The New Jersey Sub-Class)

99.     Plaintiff repeats and realleges each of the foregoing paragraphs of this Verified Complaint as set forth herein.

100.    All contracts of sale impose an obligation of good faith in its performance and enforcement.

101.    BMW breached its implied covenants of good faith and fair dealing when selling Plaintiff and class members Potenza RFTs that it knew, or should have known, were defective at the time of sale.

102.    BMW further breached its implied covenants of good faith and fair dealing when it refused to replace, or assist in the replacement, of the Potenza RFTs when Plaintiff and class members gave it the opportunity to cure the defects after they manifested.

103.    BMW's breach of its implied covenants of good faith and fair dealing was maximized when it intentionally, and in bad faith failed to fully disclose the Potenza RFT's defects to the Plaintiff and class members, for BMW's own pecuniary gain.

104.    BMW further breached its implied covenants of good faith and fair dealing by selling and/or leasing a product to Plaintiff and class members that it knew or should have known was not fit for the particular purpose the product was being purchased and/or leased for, which is a reasonable belief when purchasing and/or leasing a vehicle with accompanying essential equipment like tires.

105.    BMW, by selling the defective Potenza RFTs and refusing to replace them with non-defective tires, breached the implied covenant of good faith and fair dealing, which has in turn damaged Plaintiff and class members who are entitled to damages at an amount to be

determined at trial.

### SIXTH CLAIM FOR RELIEF
**NEW JERSEY CONSUMER FRAUD ACT ("NJCFA") (N.J.S.A. § 56:8-1 *et seq.*))**
**FRAUDULANT SCHEME TO SELL DEFECTIVE TIRES**
*(As to BMW, BFNA, BATO and BSA Defendants*
*on Behalf of The Class and New Jersey Sub-Class)*

106.    Plaintiff repeats and realleges each of the foregoing paragraphs of this Verified

Complaint as set forth herein.

107.    Plaintiff, Class members, and New Jersey Sub-Class members and Defendants are

"persons" as defined by the NJCFA.

108.    Plaintiff, Class members, and New Jersey Sub-Class members are "consumers"

under the NJCFA.

109.    The vehicles and Potenza RFTs are "merchandise" as defined by the NJCFA and

are offered for sale to the general public.

110.    Plaintiff, Class members, and the New Jersey Sub-Class members suffered

ascertainable losses in that they purchased products that were defective upon purchase/lease and

could not be used for the purpose for which they purchased/leased them.

111.    Additionally, the cost to replace the tires is also an ascertainable loss, whether

expended or not yet incurred.

112.    Defendants violated the NJCFA when they intentionally failed to fully disclose

the Potenza RFTs defects, which includes but is not limited to premature unusability, unsafe

conditions, excessive noise, and rough rides.

113.    Defendants engaged in deceptive practices as a scheme to persuade Plaintiff,

Class members, and New Jersey Sub-Class members to purchase and/or lease vehicles equipped

with the defective Potenza RFTs.

114.   Had Defendants not consciously omitted and concealed such material information, Plaintiff, Class members, and New Jersey Sub-Class members likely would not have purchased and/or leased the automobiles equipped with defective Potenza RFTs.

115.   Plaintiff, Class members, and New Jersey Sub-Class members all suffered monetary loss and diminution in value as a result of Defendants' deceptive omissions and practices and are entitled to damages at an amount to be determined at trial.

## CONCLUSION

116.   Plaintiff, Class members, and New Jersey Sub-Class members have all sustained significant harm as a result of Defendants' fraudulent scheme.

**WHEREFORE**, Plaintiff respectively requests the following relief:

(a)   An Order certifying the proposed Class and the proposed New Jersey Sub-Class herein and appointing Plaintiffs and the undersigned counsel of record to represent the Class and the New Jersey Sub-Class;

(b)   An Order issuing a preliminary injunction and enjoining and restraining Defendants, its representatives, officers, employees and/or agents and all others, known and unknown, from continuing to take illegal action as set forth in this Complaint, including, without limitation, prohibiting Defendants from selling any automobiles equipped with Potenza RFTs;

(c)   An Order issuing a permanent injunction enjoining Defendant and all others, known and unknown, from continuing to take illegal action as set forth in this Complaint, including, without limitation, without limitation, prohibiting Defendants from selling any automobiles equipped with Potenza RFTs;

(d)   A Judgment awarding Plaintiff, the Class, and the New Jersey Sub-Class compensatory, consequential, and statutory damages;

(e)   A Judgment awarding Plaintiff, the Class, and the New Jersey Sub-Class exemplary, punitive and treble damages; and

(f)   Such other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiffs hereby demands trial by jury of all issues so triable.

**MARKS & KLEIN, LLP**
Attorneys for Plaintiff

Dated: July 20, 2011

*/s/ Justin M. Klein*

**JUSTIN M. KLEIN**

Barry Eichen
Daryl Zaslow
**EICHEN, CRUTCHLOW, ZASLOW, & MCELROY, LLP**
Attorneys for Plaintiff