UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAVID GREENE,**<br><br>Plaintiff,<br><br>v.<br><br>**BMW OF NORTH AMERICA,** *et al.*,<br><br>Defendants. | Civ. No. 2:11-04220 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff David Greene brings this putative class action on behalf of owners and lessees of BMW automobiles equipped with Potenza Run Flat Tires ("Run Flats" or "the Tires"). Alleging that Run Flats develop dangerous sidewall bubbles—but not alleging damage to his car or injury to himself—Greene seeks upwards of $5 million on behalf of himself and his putative class for, *inter alia*, fraud and breach of warranty. He also seeks fees on behalf of his attorneys. Defendants Bridgestone Firestone North American Tire, LLC, Bridgestone Americas Tire Operations LLC, Bridgestone Americas Inc. (together "Bridgestone"), and BMW of North America ("BMW") (together "Defendants") move to dismiss and to strike Greene's class allegations.[1] This opinion considers only BMW's motion; Bridgestone's motion is addressed separately. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, BMW's motion to dismiss is **GRANTED**. Its motion to strike Greene's class allegations is **DENIED** as moot.

---

[1] Bridgestone Americas Tire Operations LLC was formerly known as Bridgestone Firestone North American Tire, LLC.

I.  **BACKGROUND**[2]

On March 17, 2010, Greene leased a 2010 BMW 335i Convertible with Run Flats from Paul Miller BMW.  Compl. ¶¶ 2-3, ECF No. 1.  The Run Flats were guaranteed by a limited manufacturer's warranty (the "Bridgestone Warranty" or "the Warranty"), which provided for free replacements "during the first twenty-five percent of tread wear or within twelve months from the date of purchase . . . whichever occurs first."  Bridgestone Warranty 30; ECF No. 1-1.

Apparently, Greene's 335i came with two BMW documents that reference tires.  The BMW "Tire Warranty" states as follows:

> Your vehicle's tires are covered by a warranty from the respective Tire Manufacturer . . .
>
> Refer to the respective tire warranty brochure for the terms and conditions of your tire warranty . . .
>
> BMW of North America, LLC, makes every effort to provide the most current coverage information of each tire manufacturer.  We recommend contacting or visiting the specific website of the specific tire manufacturer, to ensure that the most current tire coverage is being applied.

BMW Tire Warranty 1, ECF No. 1-1.  The second BMW document that refers to tires is the BMW N.A. Service and Warranty Information Manual (the "BMW Manual").  BMW Manual, ECF No. 14-2.  The Manual's "Tire Warranty Statement" provides:

> Tires are warranted by their respective manufacturer as detailed in the applicable tire manufacturer's warranty statements. Instructions for proper tire care and maintenance are contained in the Owner's Manual. Should you experience difficulty in obtaining warranty service from a tire manufacturer, your authorized BMW center will assist you in resolving the difficulty.

BMW Manual 41.

---

[2] The facts presented in this opinion are derived from Greene's complaint, as well as the documents that form the basis of his claims.  Greene's allegations are presumed true for the purposes of this motion.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Within six months of his lease, Greene noticed a bubble in his left-rear tire. Compl. ¶ 4.  Over the next year, as his mileage increased to 13,800, Greene discovered two bubbles in his right-front tire. *Id.* ¶ 3, 5. "[R]epresentatives" of "numerous BMW dealerships throughout the State of New Jersey" said that he "was [in] a dangerous situation and that he should immediately replace" his Tires. *Id.* ¶ 6.  Unidentified individuals at "BMW" (likely BMW dealerships, not the Defendant, BMW of North America) explained that bubbling before 14,000 miles was a "normal problem for this type of tire." *Id.* at ¶¶ 48-49.

After Paul Miller BMW "callously" declined an invitation to "remedy the defects" in Greene's tires, Greene proceeded to purchase a replacement set of the same Run Flats on ebay. *Id.* ¶¶ 8, 9.  He then brought claims sounding in state and federal law against BMW and Bridgestone.  As Greene and Bridgestone are citizens of different states, and as Greene seeks more than $5 million on behalf of himself and his putative class, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2)(A); *see also McGee v. Cont. Tire North America*, No. 6-6234, 2007 WL 2462624, at *4 (D.N.J. Aug. 27, 2007) (CAFA provides jurisdictional basis for class actions brought under the Magnuson-Moss Warranty Act).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth*, 422 U.S. at 501.

A Complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), a court typically must limit its review to the pleadings.  *See, e.g., Hart v. Electronic Arts, Inc.*, 740 F. Supp. 2d 658, 662–63 (D.N.J. Sept. 22, 2010). But where the complaint explicitly refers to or relies upon a document, the Court may consider that document in deciding the motion under the incorporation by reference doctrine. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)). Greene's Complaint relies on three documents of note here: the Bridgestone Warranty, the BMW "Tire Warranty," and the BMW Manual. *See, e.g.* Compl. ¶¶ 22-23, 27.  The Court will consider these documents for purposes of the instant motion.

### III.   DISCUSSION

Greene's Complaint asserts six causes of action against BMW: (1) breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA") (Count I); (2) breach of implied warranty under the MMWA (Count II); (3) breach of express warranty under New Jersey's Uniform Commercial Code (Count III); (4) breach of implied warranty of merchantability under New Jersey's Uniform Commercial Code (Count IV); breach of the implied covenant of good faith and fair dealing under New Jersey common law (Count V); and violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count VI).  BMW moves to dismiss all Counts. For the reasons set forth below, the motion will be granted.

#### A.   BREACH OF EXPRESS WARRANTY (Count III)

Greene's claim for breach of express warranty fails because BMW did not expressly warrant his Tires.

New Jersey's Uniform Commercial Code provides that "[e]xpress warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J.S.A. 12A:2A-210(1)(a), (b).  To create an express warranty, a lessor need not use the term "warrant" or "guarantee," and it need not even "specific[ally] intend" to create such a warranty.  N.J.S.A. 12A:2A-210(2).

Greene argues that BMW created an express warranty in two ways.  First, BMW made representations about the Tires that became part of the basis of Greene's bargain.  Second, BMW "made inconsistent representations regarding the replacement of the [Tires] in the BMW Service and Warranty Manual."  Pl.'s Br. 6.  Neither argument withstands scrutiny.

BMW's "Tire Warranty" document provides that "[the] vehicle's tires are covered by a warranty from the tire manufacturer."  BMW Tire Warranty 1.  The Tire Warranty refers readers to the Bridgestone Warranty for "the terms and conditions" of the Tire warranty.  *Id.*  Crediting Greene's assertion that a tire warranty was a basis for his bargain, it was Bridgestone's warranty—not BMW's—that formed the basis of his bargain.  BMW has consistently maintained that it does not warrant tires.  Its manual is not to the contrary when it states: "Should you experience difficulty in obtaining warranty service from a tire manufacturer, your authorized BMW center will assist you in resolving the difficulty."  BMW Manual 29.  This is an offer to help obtain warranty service from Bridgestone; it is not a warranty from BMW.  *Cf. Robinson v. American Honda Motor Co. Inc.*, 551 F.3d 218 (4th Cir. 2009) (no express warranty where car manufacturer offered to help buyer obtain service from tire manufacturer).  As BMW "clearly, unambiguously, and repeatedly excludes tires from [its own] warranty coverage," *id.*, Greene has not and cannot state a claim for breach of express warranty.  Accordingly, the Court will **DISMISS** Greene's breach of express warranty claim **WITH PREJUDICE**.

### B.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Count IV)

Greene maintains that his 355i did not satisfy its implied warranty of merchantability.  The car was unmerchantable, Greene alleges, because its tire bubbles made for a "distractingly loud," "[un]controlled," and "dangerous" ride.  Compl. ¶¶ 6, 44-45.  Greene's claim is not "plausible on its face."  *Twombly*, 550 U.S. at 570.

"Under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet."  *Green v. G.M.C.*, 2003 WL 21730592, at *6 (App. Div. 2003).  "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation."  *Id.*  Though Greene's Tires developed bubbles, he was still able to drive his 335i for more than one year.  The quality of Greene's

5

ride was apparently not poor enough for Greene to ever contact the tire manufacturer.  Indeed, Greene replaced his allegedly unmerchantable tires with the same exact model Tire.  It is simply implausible that Greene's Run Flat-equipped 335i provided anything other than reliable transportation.  While the Court recognizes that Greene's Tires were far from perfect, it also recognizes that the implied warranty comes nowhere close to guaranteeing perfection.  "Instead, it provides for a minimum level of quality."  *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282-83 (D.N.J. 2011) (internal citation and quotation omitted).  Finally, Greene does not allege that his Tires "have a shorter tread life than other run-flat tires, and this is the proper standard of comparison." *Robinson*, 551 F.3d at 226.

Greene has not "nudged" his breach of implied warranty claim "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680.  He believes his Tires were dangerous because "dealership representatives" at "numerous BMW dealerships throughout the State of New Jersey" said so.  Compl. ¶ 6.  Greene does not provide names or titles of the people he spoke with.  Nor does he say whether they offered any support for their assertions.  Perhaps the people he spoke with knew what they were talking about.  Perhaps not.  The Court cannot allow a breach of implied warranty claim to proceed on little more than speculation.  It would be a different story if Greene, who was never injured by the alleged defect, could provide the Court with some idea of the character or magnitude of the danger alleged.  *Cf. Suddreth v. Mercedes-Benz, LLC*, No. 10-5130, 2011 WL 5240965, at *4 (D.N.J. Oct. 31, 2011) (dismissing breach of implied warranty of merchantability claim where plaintiffs "fail[ed] to allege why the cars as sold were not of merchantable quality").  Based on his opposition paper, it appears that Greene has no idea what made his Tire bubbles dangerous.  Greene maintains that he has "allege[d] factually what made his vehicle unmerchantable or unsafe for driving," but the allegations he cites are entirely conclusory.  Pl.'s Br. 8, ECF No. 21.

Greene's behavior provides additional confirmation that his Tires were safe.  As discussed earlier, Greene replaced his supposedly dangerous Tires with the identical Run Flat model.  He attempts to justify this by arguing that no other tire would fit his car.  This argument explains why Greene did not replace his Run Flats with a different kind of tire; it does not explain why he replaced his Run Flats with the same kind of tire.  One wonders: if a tire is safe for driving, why is it unsafe for litigation?

Still, because it is conceivable that Greene could plead facts that amount to a plausible claim for relief, the Court will **DISMISS** Greene's breach of implied warranty claim **WITHOUT PREJUDICE**.

## C.    MMWA (Counts I and II)

The parties agree that "[s]tate substantive law determines the liability for MMWA claims based on breaches of express and implied warranties."  Pl.'s Br. 9; Def.'s Br. 10, ECF No. 24; *see also McCalley v. Samsung Elec. Am., Inc.*, No. 7-2121, 2008 WL 878402, at *7 n.5 (D.N.J. Mar. 31, 2008).  Because the Court dismissed Greene's claim for breach of express warranty with prejudice, it will **DISMISS** his MMWA claim for breach of express warranty **WITH PREJUDICE**.  *See Nobile v. Ford Motor Co.*, No. 10-1890, 2011 WL 900119, at *4 (D.N.J. Mar. 14, 2011).  Similarly, because the Court Greene's claim for breach of implied warranty without prejudice, it will **DISMISS** his MMWA claim for breach of implied warranty **WITHOUT PREJUDICE**.  *See id.*

## D.    BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Count V)

Greene's claim for breach of the implied covenant of good faith and fair dealing has zero traction.  While Greene is correct that "every contract in New Jersey [has] an implied convenant of good faith and fair dealing," Pl.'s Br. 12 (quoting *Onderdonk v. Presbyterian Homes of N.J.*, 85 N.J. 171, 182 (1981)), Greene never alleges that he contracted with the Defendant, BMW of North America.  Instead, Greene contracted with a BMW dealership, Paul Miller BMW.  Compl. ¶ 2.  No contract with the Defendant means no implied covenant of good faith and fair dealing from the Defendant.  *See, e.g.*, *Torres v. Riverstone Residential*, No. 10-79, 2011 WL 4056209, at *8 (D.N.J. Sept. 12, 2011).  Accordingly, the Court will **DISMISS** Greene's claim for breach of the implied covenant of good faith and fair dealing.  Since it is possible that Greene contracted with the Defendant but neglected to mention that contract in his Complaint, the dismissal operates **WITHOUT PREJUDICE**.

## E.    NJCFA (Count VI)

Greene has not stated a claim under the NJCFA.  The NJCFA applies to "three general categories of unlawful acts: (1) affirmative acts, (2) knowing omissions, and (3) regulatory violations."  *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 245 (2005).  No regulatory violation is at issue here.  Nor is any affirmative act.  *See* Pl.'s Br. 19 ("Plaintiff is not alleging consumer fraud stemming from any written agreement, i.e., the Bridgestone Manual.").  Greene argues that BMW committed an actionable omission under the NJCFA when it failed to inform him that the Tires "would become defective and unsafe in as little

7

as six (6) months, and in some cases sooner." Compl. ¶ 31. Greene's NJCFA claim fails because his allegations do not allow the Court "to draw the reasonable inference that [Bridgestone] is liable for the misconduct alleged." *Iqbal*, 556 U.S at 678.

Omission-based fraud claims under the NJCFA require a showing of knowledge and intent to deceive on the part of the defendant. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). Fraud claims are subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b) and the plausibility pleading requirements of Federal Rule of Civil Procedure 8(a). While Rule 9(b) permits knowledge and intent to be alleged "generally," it does not excuse Rule 8(a)'s requirement that plaintiffs plead "factual allegations that make their theoretically viable claim plausible." *Burlington Coat Factory*, 114 F.3d at 1418.

Assuming, for the sake of argument, that Greene's fraud claim satisfies Rule 9(b), it still fails to satisfy Rule 8(a). Greene alleges that unnamed individuals at BMW dealerships told him that bubbling was a "dangerous" and a "normal occurrence," and that a single user of the website Tiretrack.com described bubbling in an online posting. Compl. ¶¶ 6, 35, 48. Greene does not allege that these unnamed BMW dealership employees ever notified BMW of North America (the Defendant here) of their concerns, nor does he plead any facts suggesting that BMW of North America knew about the posting on Tiretrack.com. Greene further charges, without any support, that "Defendants' knowledge of the defects is supported by the prerequisite testing that they performed, or should have performed . . . ." Compl. ¶ 33. This is little more than ungrounded speculation. In sum, Greene's allegations do not suggest that discovery will produce evidence that BMW knew the Tires "would become defective and unsafe in as little as six (6) months, and in some cases sooner." *Id.* ¶ 31. Nor do Greene's allegations suggest that discovery will reveal evidence of an intent to deceive. Accordingly, the Court will **DISMISS** Green's NJCFA claim **WITHOUT PREJUDICE**.

## IV.   CONCLUSION

The Court will **GRANT** BMW's motion to dismiss. Greene's claims for breach of express warranty under New Jersey law and the MMWA are **DISMISSED WITH PREJUDICE**. All other claims are **DISMISSED WITHOUT PREJUDICE**. Accordingly, BMW's motion to strike Greene's class allegations is **DENIED** as moot. The Court will provide Greene with 30 days in which to file an Amended Complaint consistent with this opinion. An appropriate order follows.

                                       /s/ William J. Martini  
                                   **WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 28, 2012**