UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAVID GREENE,** | Civ. No. 2:11-04220 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| **BMW OF NORTH AMERICA,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff David Greene brings this putative class action on behalf of owners and lessees of BMW automobiles equipped with Potenza Run Flat Tires ("Run Flats" or "the Tires"). Alleging that Run Flats develop dangerous sidewall bubbles—but not alleging damage to his car or injury to himself—Greene seeks upwards of $5 million on behalf of himself and his putative class for, *inter alia*, fraud and breach of warranty. He also seeks fees on behalf of his attorneys. Defendants Bridgestone Americas Tire Operations LLC and Bridgestone Americas Inc. (together "Bridgestone"), and BMW of North America ("BMW") (together "Defendants") move to dismiss and to strike Green's class allegations.[1] This opinion considers only Bridgestone's motion; BMW's motion is addressed separately. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Bridgestone's motion to dismiss is **GRANTED**. Its motion to strike Greene's class allegations is **DENIED** as moot.

---

[1] Bridgestone Americas Tire Operations LLC was formerly known as Bridgestone Firestone North American Tire, LLC.

1

## I. BACKGROUND[2]

On March 17, 2010, Greene leased a 2010 BMW 335i Convertible with Run Flats from Paul Miller BMW. Compl. ¶¶ 2-3, ECF No. 1. The Run Flats were guaranteed by a limited manufacturer's warranty (the "Bridgestone Warranty" or "the Warranty"), which provided for free replacements "during the first twenty-five percent of tread wear or within twelve months from the date of purchase . . . whichever occurs first." Bridgestone Warranty 30; ECF No. 1-1. The Warranty contained an arbitration clause. *Id.* at 32.

Within six months of his lease, Greene noticed a bubble in his left-rear tire. Compl. ¶ 4. Over the next year, as his mileage increased to 13,800, Greene discovered two bubbles in his right-front tire. *Id.* ¶ 3, 5. "[R]epresentatives" of "numerous BMW dealerships throughout the State of New Jersey" said that he "was [in] a dangerous situation and that he should immediately replace" his Tires. *Id.* ¶ 6. Unidentified individuals at "BMW" (likely BMW dealerships, not the Defendant, BMW of North America) explained that bubbling before 14,000 miles was a "normal problem for this type of tire." *Id.* at ¶¶ 48-49.

After Paul Miller BMW "callously" declined an invitation to "remedy the defects" in Greene's tires, Greene proceeded to purchase a replacement set of the same Run Flats on ebay. *Id.* ¶¶ 8, 9. He then brought claims sounding in state and federal law against BMW and Bridgestone. As Greene and Bridgestone are citizens of different states, and as Greene seeks more than $5 million on behalf of himself and his putative class, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2)(A); *see also McGee v. Cont. Tire North America*, No. 6-6234, 2007 WL 2462624, at *4 (D.N.J. Aug. 27, 2007) (CAFA provides jurisdictional basis for class actions brought under the Magnuson-Moss Warranty Act).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations

---

[2] The facts presented in this opinion are derived from Greene's complaint, as well as the documents that form the basis of his claims. Greene's allegations are presumed true for the purposes of this motion. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth*, 422 U.S. at 501.

A Complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), a court typically must limit its review to the pleadings. *See, e.g., Hart v. Electronic Arts, Inc.*, 740 F. Supp. 2d 658, 662–63 (D.N.J. Sept. 22, 2010). But where the complaint explicitly refers to or relies upon a document the Court may consider that document for purposes of the motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)). Greene attached to his Complaint the Bridgestone/Firestone Tire Manual, which includes the Bridgestone Warranty, as well as the BMW "Tire Warranty" (the "BMW Tire Warranty"). *Id.* As those documents are incorporated into the Complaint, *see, e.g.*, Compl. ¶¶ 22-23, 27, the Court will consider them for purposes of the instant motion.

The Court will not consider the certification attached to Greene's opposition brief. That document asserts facts nowhere mentioned in the Complaint, most notably: "I do not recall ever receiving the Bridgestone manual. At no time prior to leasing the vehicle did I view the Bridgestone manual." Certification ¶ 6, ECF No. 23-4. This admission is, to say the least, surprising given the Complaint's heavy reliance on the Warranty. The Court will not consider it.

### III. DISCUSSION

Bridgestone moves to dismiss all claims and to strike Greene's class allegations. It argues that the Warranty requires Greene to arbitrate his claims, not litigate them. This argument is unsuccessful. Bridgestone also argues that Greene has failed to state a claim upon which relief can be granted. This argument is successful.

#### A. ARBITRATION

Bridgestone argues that Greene is bound by the Warranty's arbitration clause. Greene Disagrees. He reasons that the arbitration clause is unenforceable

for lack of assent. Based on the parties' arguments, the Court will not enforce the arbitration clause.

Section 2 of the Federal Arbitration Act "makes written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009) (quoting 9 U.S.C. § 2 ("Section 2")). Section 2 does not "purport[] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Id.* at 630.

Under New Jersey law, arbitration clauses are enforceable if (1) they bear the plaintiff's signature, or (2) there is "some other unmistakable indication that [plaintiff] affirmatively had agreed to arbitrate his claims." *Leodori v. CIGNA Corp.*, 175 N.J. 293, 307 (2003). Nothing suggests that Greene assented to the arbitration clause by signing either the Warranty or any agreement incorporating the Warranty. Instead, Bridgestone maintains that Greene consented to arbitration when he brought suit on a warranty containing an arbitration clause. On Bridgestone's argument, it does not matter whether the arbitration provision was enforceable before Greene filed suit; the provision is enforceable **because** Greene filed suit. In essence, Bridgestone reasons that litigation conduct can transform an unenforceable arbitration provision into an enforceable one. Bridgestone cites no New Jersey case in support of this argument, and the lone federal case it cites is inapposite, as that case concerns an arbitration clause that became enforceable based partly on pre-litigation conduct. *See* Defs.' Br. 10, ECF No. 19-1 (citing *Nauro Phosphate Royalties v. Drago Daic Interests*, 138 F.3d 160, 167 (5th Cir. 1998)).

The Court recognizes the appeal of Bridgestone's argument: if Greene can enjoy the warranty's benefits, he should have to accept its burdens, as well. But fair as it may seem, Bridgestone's argument is effectively "heads I win, tails you lose." It says that regardless of whether an arbitration provision is enforceable before a plaintiff sues, the provision becomes enforceable as soon as a plaintiff sues. The Court is reluctant to adopt that position for the following reason: If a warranty's arbitration provision is unenforceable before a Complaint is filed, an individual should be allowed to bring a breach of warranty claim in court (assuming the arbitration provision is severable). But that is precisely what Bridgestone's argument would prohibit.

Bridgestone's arbitration argument is not saved by the doctrine of equitable estoppel. As an initial matter, it is New Jersey equitable estoppel doctrine—not federal doctrine—that governs. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. App'x. 704, 708 n.2 (10th Cir. 2011) (citing *Arthur Anderson*). In New Jersey, equitable estoppel is

> the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.

*Carlsen v. Masters, Mates & Pilots Pension Plan Trust,* 80 N.J. 334, 339 (1979) (internal citations omitted). To receive the doctrine's protections, Bridgestone would have to argue that the Complaint led it to "change [its] position for the worse." *Id.* It has not done so.

Ultimately, the arbitration provision here was only enforceable if it was enforceable before Greene filed his Complaint. Bridgestone does not dispute that the provision was enforceable before Greene filed his Complaint. Accordingly, Bridgestone has failed to satisfy its burden, and the Court will **DENY** the motion to dismiss based on the Warranty's arbitration clause.

### B.  SUBSTANTIVE CLAIMS

Greene asserts claims for breach of express warranty and breach of implied warranty of merchantability. Neither survives a 12(b)(6) analysis. Greene also brings claims under the Magnuson-Moss Warranty Act ("MMWA") and the New Jersey Consumer Fraud Act ("NJCFA"). These claims are also deficient.

#### a.  Breach of Express Warranty (Count III)

After Defendants moved to dismiss, Greene voluntarily withdrew his claim for breach of express warranty. That withdrawal was plainly for strategic reasons having to do with the arbitration clause. Accordingly, the Court will dismiss this claim **WITH PREJUDICE**. While the Court would normally leave it at that, it will not do so here. Because the MMWA claim for breach of express warranty implicates the state law claim for breach of express warranty, the Court will conduct a complete analysis of the state law claim.

To state a claim for breach of express warranty, Greene must allege that Bridgestone "failed to perform its obligation to 'repair or replace' a warranted defect." *Demorato v. Carver Boat Corporations*, No. 6-240, 2007 WL 1456207, at *5 (D.N.J. May 16, 2007). Bridgestone's Warranty requires Tire owners to bring their Tires to "authorized Bridgestone Firestone retailer[s]" for service. Warranty 32. Greene does not allege that he ever brought his tires to an authorized retailer.

5

Accordingly, he does not allege that Bridgestone failed to satisfy its obligations, and he does not state a claim for breach of express warranty.

Greene attempts—unsuccessfully—to blame BMW for his failure to take advantage of the Warranty. He does so by arguing that BMW had "apparent authority" to act as a Bridgestone authorized retailer. Put differently, Greene is arguing that he went to BMW dealerships only because he thought BMW dealerships stood in Bridgestone's shoes. Apparent authority exists where a "principal's actions have misled a third party into believing that the agent has the authority to act on its behalf." *Siemens Fin. Servs., Inc. v. Haband Co., Inc.*, 2010 WL 2089802, at *3 (App. Div. May, 25, 2010). The apparent authority determination hinges on whether a principal has "placed the agent in such a situation that a person of ordinary prudence . . . is justified in presuming that such an agent has authority to perform the particular act in question[.]" *Mann v. Interstate Fire & Cas. Co.*, 307 N.J. Super. 587, 595-96 (App. Div. 1998) (internal citation and quotation omitted). For Greene to succeed on his apparent authority argument, he must allege that Bridgestone (the purported principal) misled Greene into thinking BMW of North America (the purported agent) was acting on its behalf.

Greene's apparent authority argument fails for a simple reason: BMW did not have apparent authority. Greene claims that he was misled into thinking that BMW dealers were authorized Bridgestone retailers. Paul Miller BMW—not the Defendant, BMW of North America—supposedly accomplished this feint by leasing Greene a car with Bridgestone Tires. *See* Pl.'s Br. 10 ("[I]t was apparent to Greene that Paul Miller BMW was authorized to sell Bridgestone tires because the same dealership leased him the new Vehicle with Potenza RFTs as original equipment on it."). But principals create apparent authority, not agents. On Greene's telling, BMW (actually, its dealer) was an agent, but it still created actual authority. This manifests a fundamental misunderstanding of agency law. Furthermore, even if Greene correctly applied agency law, his argument would still fail: no reasonable person would think Bridgestone made Paul Miller an authorized retailer just because Bridgestone allowed Paul Miller to sell cars with Run Flats.

Because it appears that Greene did not try to get his Tires repaired at an authorized Bridgestone retailer, he has failed to state a claim upon which relief can be granted. Since it is conceivable that Greene did make such an attempt but neglected to mention it in his Complaint, the Court would normally be inclined to dismiss this claim without prejudice. But since Greene withdrew the claim for strategic reasons, the Court will make the dismissal **WITH PREJUDICE**.

### b. Breach of Implied Warranty of Merchantability (Count IV)

Bridgestone thinks it disclaimed the implied warranty of merchantability. It did not. That warranty was never successfully disclaimed. But it was not breached.

The MMWA provides that "[n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product . . . ." 15 U.S.C. § 2308(a). A disclaimer that violates this rule is "ineffective for purposes of . . . State law." 15 U.S.C. § 2308(c). The express warranty for Bridgestone's Tires was written. Accordingly, any disclaimer of the implied warranty of merchantability was "ineffective." *Id.*

While Greene's implied warranty survives, it was never breached. Greene's breach of warranty claim amounts to little more than: the Tire bubbles made for a "distractingly loud," "[un]controlled," and "dangerous" ride. Compl. ¶¶ 6, 44-45. Based on these allegations, Greene's claim is not "plausible on its face." *Twombly*, 550 U.S. at 570.

"Under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet." *Green v. G.M.C.*, 2003 WL 21730592, at *6 (App. Div. 2003). "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation." *Id.* Though Greene's Tires developed bubbles, he was still able to drive his 335i for more than one year. The quality of Greene's ride was apparently not poor enough for Greene to ever contact the tire manufacturer. Indeed, Greene replaced his allegedly unmerchantable tires with the same exact model Tire. It is simply implausible that Greene's Run Flat-equipped 335i provided anything other than reliable transportation. While the Court recognizes that Greene's Tires were far from perfect, it also recognizes that the implied warranty comes nowhere close to guaranteeing perfection. "Instead, it provides for a minimum level of quality." *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282-83 (D.N.J. 2011) (internal citation and quotation omitted). Finally, Greene does not allege that his Tires "have a shorter tread life than other run-flat tires, and this is the proper standard of comparison." *Robinson*, 551 F.3d at 226.

Greene has not "nudged" his breach of implied warranty claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. He believes his Tires were dangerous because "dealership representatives" at "numerous BMW dealerships throughout the State of New Jersey" said so. Compl. ¶ 6. Greene does not provide names or titles of the people he spoke with. Nor does he say whether they offered any support for their assertions. Perhaps the people he spoke with

7

knew what they were talking about. Perhaps not. The Court cannot allow a breach of implied warranty claim to proceed on little more than speculation. It would be a different story if Greene, who was never injured by the alleged defect, could provide the Court with some idea of the character or magnitude of the danger alleged. *Cf. Suddreth v. Mercedes-Benz, LLC*, No. 10-5130, 2011 WL 5240965, at *4 (D.N.J. Oct. 31, 2011) (dismissing breach of implied warranty of merchantability claim where plaintiffs "fail[ed] to allege why the cars as sold were not of merchantable quality"). Based on his opposition paper, it appears that Greene has no idea what made his Tire bubbles dangerous. Greene claims that the bubbles made his car "perilous" to drive, but the allegations he cites provide no support for this claim. Pl.'s Br. 9, ECF No. 23.

Greene's behavior provides additional confirmation that his Tires were safe. As discussed earlier, Greene replaced his supposedly dangerous Tires with the identical Run Flat model. He attempts to justify this by arguing that no other tire would fit his car. This argument explains why Greene did not replace his Run Flats with a different kind of tire; it does not explain why he replaced his Run Flats with the same kind of tire. One wonders: if a tire is safe for driving, why is it unsafe for litigation?

Still, because it is conceivable that Greene could plead facts that amount to a plausible claim for relief, the Court will **DISMISS** Greene's breach of implied warranty claim **WITHOUT PREJUDICE**.

### c. Magnuson-Moss Warranty Act (Counts I and II)

The parties agree that "[s]tate substantive law determines the liability for MMWA claims based on breaches of express and implied warranties." Pl.'s Br. 11, ECF No. 23; Def.'s Reply 9, ECF No. 24; *see also McCalley v. Samsung Elec. Am., Inc.*, No. 7-2121, 2008 WL 878402, at *7 n.5 (D.N.J. Mar. 31, 2008). Because the analysis in the previous section demonstrates that the Court would dismiss Greene's claim for breach of express warranty without prejudice, and because the Court has dismissed the claim for breach implied warranty without prejudice, the Court will **DISMISS** Greene's MMWA claims **WITHOUT PREJUDICE**. *See Nobile v. Ford Motor Co.*, No. 10-1890, 2011 WL 900119, at *4 (D.N.J. Mar. 14, 2011).

### d. New Jersey Consumer Fraud Act (Count VI)

Greene has not stated a claim under the NJCFA. The NJCFA applies to "three general categories of unlawful acts: (1) affirmative acts, (2) knowing omissions, and (3) regulatory violations." *Thiedemann v. Mercedes-Benz USA,*

*LLC*, 183 N.J. 234, 245 (2005).  No regulatory violation is at issue here.  Nor is any affirmative act.  *See* Pl.'s Br. 19 ("Plaintiff is not alleging consumer fraud stemming from any written agreement, i.e., the Bridgestone Manual.").  Greene argues that BMW committed an actionable omission under the NJCFA when it failed to inform him that the Tires "would become defective and unsafe in as little as six (6) months, and in some cases sooner."  Compl. ¶ 31.  Greene's NJCFA claim fails because his allegations do not allow the Court "to draw the reasonable inference that [Bridgestone] is liable for the misconduct alleged."  *Iqbal*, 556 U.S at 678.

Omission-based fraud claims under the NJCFA require a showing of knowledge and intent to deceive on the part of the defendant.  *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994).  Fraud claims are subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b) and the plausibility pleading requirements of Federal Rule of Civil Procedure 8(a).  While Rule 9(b) permits knowledge and intent to be alleged "generally," it does not excuse Rule 8(a)'s requirement that plaintiffs plead "factual allegations that make their theoretically viable claim plausible."  *Burlington Coat Factory*, 114 F.3d at 1418.

Assuming, for the sake of argument, that Greene's fraud claim satisfies Rule 9(b), it still fails to satisfy Rule 8(a).  Greene alleges that unnamed individuals at BMW dealerships told him that bubbling was "dangerous" and a "normal occurrence," and that a single user of the website Tiretrack.com described bubbling in an online posting.  Compl. ¶¶ 6, 35, 48.  Greene does not allege that these unnamed BMW employees ever notified Bridgestone of their concerns, nor does he plead any facts suggesting that Bridgestone knew about the posting on Tiretrack.com.  Greene further charges, without any support, that "Defendants' knowledge of the defects is supported by the prerequisite testing that they performed, or should have performed . . . ."  Compl. ¶ 33.  This is little more than ungrounded speculation.  In sum, Greene's allegations do not suggest that discovery will produce evidence that Bridgestone knew the Tires "would become defective and unsafe in as little as six (6) months, and in some cases sooner."  *Id*. ¶ 31.  Nor do Greene's allegations suggest that discovery will reveal evidence of an intent to deceive.  Accordingly, the Court will **DISMISS** Green's NJCFA claim **WITHOUT PREJUDICE**.

## IV. CONCLUSION

Bridgestone has failed to establish that arbitration is the proper forum for this dispute.  The Court will nevertheless **GRANT** the motion to dismiss.  Greene's claim for breach of express warranty is dismissed **WITH PREJUDICE**.  All other claims are **DISMISSED WITHOUT PREJUDICE**.  Accordingly,

9

Bridgestone's motion to strike Greene's class allegations is **DENIED** as moot. The Court will provide Greene with 30 days in which to file an Amended Complaint consistent with this opinion.  An appropriate order follows.

                                              /s/ William J. Martini  
                                    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 28, 2012**